IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

E.G., by and through her legal custodian )
and grandfather, R.G., )
)
    Plaintiff, )
)
v. ) CIVIL ACTION 18-0265-WS-MU
)
COMPANION BENEFIT )
ALTERNATIVES, INC., )
)
    Defendant. )

**ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss Amended Complaint (doc. 17). The Motion has been briefed and is now ripe.[1]

---

[1] Also pending is Plaintiff's Motion to Strike (doc. 21). In that Motion, plaintiff requests that approximately six pages of defendant's Reply (doc. 20) be stricken. As grounds, plaintiff invokes the well-settled premise that new, previously available arguments are not permitted in reply briefs. *See, e.g., Brown v. CitiMortgage, Inc.*, 817 F. Supp.2d 1328, 1332 (S.D. Ala. 2011) ("New arguments presented in reply briefs are generally not considered by federal courts.") (citations omitted); *SSAB Alabama, Inc. v. Kem-Bonds, Inc.*, 2017 WL 6612778, *6 n.10 (S.D. Ala. Dec. 27, 2017) ("the argument is improper because new, previously available arguments cannot be presented for the first time in a reply brief"). Plaintiff asserts that defendant's Reply contains an improper new argument "that the Amended Complaint fails to allege sufficient facts to support allegations showing that [defendant] was the plan administrator under the plan." (Doc. 21, at 2.) However, a fair reading of defendant's principal brief reveals that this argument is not new to the Reply, but was reasonably presented in defendant's earlier brief. (*See, e.g.,* doc. 17, at 11 ("Accepting the allegations of Plaintiff's Amended Complaint as true, at best, the Plaintiff alleges that [defendant] was acting as a third-party claim administrator," not a plan administrator), 13 ("The allegations of the Amended Complaint … demonstrate that [defendant]'s role under the Plan was to provide behavioral health claims services only pursuant to the terms and processes agreed to by the parties.").) Given defendant's principal brief's repeated characterizations of how the Amended Complaint pleads defendant's role under the plan, the Reply's assertion that plaintiff did not plead facts showing that defendant was plan administrator is not, in fact, a new argument. Contrary to plaintiff's objection, there was no "sandbagging" here. Accordingly, the Motion to Strike is **denied**.

I.     **Relevant Background.**

This is an action for recovery of ERISA benefits. According to well-pleaded factual allegations in the Amended Complaint (which are accepted as true for purposes of the pending Motion to Dismiss), plaintiff, E.G., received intensive residential mental health treatment at Ironwood, Maine, LLC, a licensed residential treatment center located in Morrill, Maine, in 2016. (Doc. 15, ¶ 12.)

During that time, E.G. was covered under her father's ERISA-regulated health insurance plan (the "Plan") sponsored by her father's employer, Diversified Port Holdings, LLC. (*Id.*, ¶¶ 5, 10.) According to plaintiff, the Plan was administered by Blue Cross and Blue Shield of Florida, Inc. ("BCBSF"). (*Id.*, ¶ 5.) Plaintiff sought coverage under the Plan for E.G.'s treatment at Ironwood; however, on or about September 28, 2016, plaintiff received a denial letter from defendant, Companion Benefit Alternatives, Inc. ("CBA"). (*Id.*, ¶ 13.)[2] That letter, which was appended to the Amended Complaint as an exhibit, indicates that CBA "manages the behavioral health benefits for this member's health plan." (Doc. 15, Exh. C, at 1.) In the September 28 letter, CBA explained that "[w]e received a request to approve Mental Health Residential Treatment services for the dates of service," but that "[b]ased on the clinical information we received, the psychiatrist denied benefits" on the grounds that "[t]his facility is out of network and does not meet service intensity criteria" because clinical staff is not on-site and E.G. was not being seen on a daily basis by a licensed behavioral health care practitioner. (*Id.*) The September 28 letter outlined plaintiff's right to appeal, which could be exercised in writing by mail, fax or telephone to CBA at the address and telephone numbers provided. (*Id.* at 2.) CBA indicated, "Once we receive your appeal request a board-certified psychiatrist who has not previously reviewed this case will review the clinical information," and that in the case of a request for expedited appeal, "[w]e will make a decision and notification within 72 hours." (*Id.*) At the end of the September 28 letter, plaintiff was advised, "If you have any questions, please contact CBA at" a specified telephone number.

---

[2] CBA is identified in plaintiff's pleading as "the third-party claims administrator for the plan in connection with mental health claims. [CBA] is a wholly-owned subsidiary of BlueCross BlueShield of South Carolina." (*Id.*, ¶ 7.)

Plaintiff did, in fact, appeal from the denial of benefits. On or about August 25, 2017, CBA sent E.G. a letter stating, "[w]e received a member appeal request regarding the service noted above," namely E.G.'s treatment at Ironwood in the summer of 2016. (Doc. 15, Exh. D, at 1.) The August 25 letter went on to provide as follows: "The psychiatrist reviewing this case has decided to uphold the decision to deny benefits for the date(s) under appeal because the clinical information provided by the facility did not meet CBA's utilization management criteria for the requested service." (*Id.*) The letter further explained that services must be "medically necessary" to be covered, and that "[w]e determine medical necessity by evaluating clinical data from your provider against CBA's utilization management criteria which is [*sic*] developed, reviewed and approved by a panel of behavioral health professionals." (*Id.* at 1-2.) A document attached to the August 25 letter was captioned "About Companion Benefit Alternatives (CBA)." (*Id.* at 10.) That document reflected the following: (i) "CBA is a behavioral health benefits management company that your health plan engages to review claims;" (ii) "CBA reviews behavioral health claims to ensure that the services you received are covered under your plan and medically necessary;" and (iii) in performing this claims-reviewing function, "[w]e compare the clinical data sent by your provider with the health plans' benefits and our medical criteria to determine if your request meets your health plans' requirements for payment." (*Id.*)

The Plan document (a copy of which is appended to the Amended Complaint) confirms that the employer is Diversified Port Holdings, LLC ("Diversified"), and reflects that "Blue Cross and Blue Shield of Florida, Inc. (BCBSF) is … provid[ing] administrative services for [Diversified's] Group Health Plan as outlined in this national Preferred Provider Organization (PPO) health Benefit program to the Employees of Diversified Port Holdings, LLC." (Doc. 15, Exh. A, at 1.) The Plan's introduction further reflects that "BCBSF provides you and your family members with cost effective health care administration on a nationwide basis," and "BCBSF may utilize the services of BlueCross BlueShield of South Carolina to administer certain portions of this Benefit program." (*Id.*)[3] The "ERISA Rights" section of the Plan

---

[3] Elsewhere, the Plan clarifies that while BCBSF may assist Diversified in making appeal determinations, BCBSF "is only acting in an advisory capacity and is not acting in a fiduciary capacity. [Diversified] at all times retains the right to make the final determination." (*Id.* at 10.) The Plan further specifies that BCBSF "provides administrative claims payment services only and does not assume any financial risk or obligation with respect to claims. The (Continued)

identifies the Plan name as "Diversified Port Holdings, LLC," and also names Diversified as the Plan Administrator, Named Trustee, and Named Fiduciary. (*Id.* at 86.) Diversified is listed as "the Plan Sponsor of the Employer's Group Health Plan." (*Id.* at 54.) By contrast, the Plan contains only a single reference to CBA, as follows: "A behavioral health company. CBA is responsible for managing behavioral health care Services, including Pre-Certifying Mental Health and Substance Use Disorder Benefits for inpatient and outpatient services." (*Id.* at 39.)

On June 7, 2018, E.G., proceeding by and through her legal custodian and grandfather, R.G., commenced these proceedings against CBA seeking recovery of the behavioral health benefits that she had been denied for her treatment at Ironwood. Neither Diversified nor BCBSF was named as a defendant or otherwise joined as a party herein. According to the Amended Complaint, "CBA had full discretionary authority to administer and pay mental health benefits under the plaintiff's plan and accordingly owes her fiduciary obligations." (Doc. 15, ¶ 9.) E.G. alleges two claims against CBA. Count 1 is styled as a claim for "Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B)," and is predicated on allegations that "[t]he services E.G. received at Ironwood were 'Medically Necessary' and it was an abuse of discretion to hold otherwise. E.G. is entitled to recover her improperly denied benefits." (*Id.*, ¶ 27.) Count 2 is framed as "Violation of Parity Act Under 29 U.S.C. § 1132(a)(1)(B)," and alleges that CBA violated the Parity Act by employing standards "in assessing medically necessary services rendered at Residential Treatment Center programs that are different than the standards it employs in assessing medically necessary services rendered at Skilled Nursing Facilities." (*Id.*, ¶ 38.)

The lone defendant, CBA, has now filed a Motion to Dismiss on two related grounds. First, CBA seeks dismissal of the Amended Complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., on the ground that CBA "is neither the Plaintiff's father's employer nor an ERISA plan fiduciary, and therefore is not a proper defendant in Plaintiff's claims for ERISA benefits." (Doc. 17, at 1.) Second, CBA moves for dismissal under Rule 12(b)(7), Fed.R.Civ.P., on the ground that both Diversified and BCBSF are required parties, the former because it is the

---

Employer's Group Health Plan is a self-funded health Plan and [Diversified] assumes all financial risk and obligation with respect to claims." (*Id.* at 87.)

employer / plan administrator and the latter because "it was the third-party administrator who contracted with third-party administrator CBA." (*Id.* at 1-2 & n.1.)

II.   **Analysis.**

CBA's Rule 12(b)(6) motion begins with the premise that "[f]or a plaintiff to state a claim for unpaid benefits under § 1132(a)(1)(B), the defendant must have discretion to award the benefits at issue. In other words, [t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Griffin v. Lockheed Martin Corp.*, 647 Fed.Appx. 920, 923 (11th Cir. Apr. 11, 2016) (citation and internal quotation marks omitted).[4] CBA goes on to cite authority for the proposition that it cannot be liable in this case unless it was performing a fiduciary function under ERISA. *See, e.g., Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) ("the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint"); *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 289 (11th Cir. 1989) ("ERISA does not regulate the duties of non-fiduciary plan administrators. As such, non-fiduciaries cannot be held liable under ERISA."). CBA reasons that, because the Amended Complaint and its exhibits (including the Plan document) reflect that CBA was merely a third-party claims administrator without full and final discretionary authority to administer and pay benefits or make final mental health claim determinations, CBA was not an ERISA fiduciary and is not a proper party defendant for E.G.'s claims under § 1132(a)(1)(B).

In response, plaintiff insists that CBA is a proper defendant, notwithstanding the foregoing principles and authorities, by application of the "*de facto* plan administrator doctrine."

---

[4]   *See also Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan."); *Griffin v. SunTrust Bank, Inc.*, 157 F. Supp.3d 1294, 1296 (N.D. Ga. 2015) ("An entity is a proper defendant under § 1132(a)(1)(B) only if it has the discretion to award the benefits at issue."); *Scarpulla v. Bayer Corp. Disability Plan*, 514 F. Supp.2d 1262, 1273 (N.D. Ala. 2007) ("Because Broadspire, as a third-party claims administrator, was not the plan administrator, and, accordingly, not a fiduciary, Broadspire is not a proper defendant in this action."); *Milton v. Life Ins. Co. of North America*, 2012 WL 2357800, *1 (N.D. Ala. June 20, 2012) ("As the party with decisional control over the Plaintiff's benefits claim, LINA is the only proper defendant in an action concerning ERISA benefits.").

The Eleventh Circuit has explained that § 1132(a)(1)(B) "confers a right to sue the plan administrator for recovery of benefits. … Proof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document." *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001). Thus, "[a] *de facto* plan administrator – *i.e.*, one who assumes responsibility for or controls the provision of plan documents and information – can be a proper defendant." *Till v. Lincoln Nat'l Life Ins. Co.*, 2014 WL 6895285, *6 (M.D. Ala. Dec. 5, 2014) (citation omitted). "The key question on this issue is whether [an entity] had sufficient decisional control over the claim process that would qualify it as a plan administrator …. This requires an analysis of the facts surrounding the administration of the … plan." *Hamilton*, 244 F.3d at 824. Relying on this language from *Hamilton*, certain district courts have opined that insurance company claims administrators may qualify as *de facto* plan administrators, and thus may be subject to ERISA liability in certain circumstances.[5] Plaintiff urges this Court to apply the *de facto* plan administrator doctrine here and to conclude that "[t]he question of whether a defendant is acting as plan administrator is fact intensive and better decided at a later stage of this litigation." *Till*, 2014 WL 6895285, at *6.

The trouble with E.G.'s position is that it runs headlong into *Oliver v. Coca Cola Co.*, 497 F.3d 1181 (11th Cir. 2007), *reh'g granted, opinion vacated in part on other grounds*, 506 F.3d 1316 (11th Cir. 2007) *and adhered to in part on reh'g*, 546 F.3d 1353 (11th Cir. 2008). In *Oliver*, the Eleventh Circuit distinguished *Hamilton* and its ilk by emphasizing that those cases "applied the *de facto* administrator doctrine to employers, not to third-party administrative services providers," where "plan participants brought suit against *employers* that had sought to avoid liability as plan administrators" by "outsourc[ing] responsibility for administering claims to a separate entity." 497 F.3d at 1194. By contrast, *Oliver* observed that "where a plaintiff has sought to hold a third-party administrative services provider liable, rather than the employer, we

---

[5] *See House v. Aetna Life Ins. Co.*, 2015 WL 2250976, *6 (M.D. Fla. May 13, 2015) (collecting "persuasive cases supporting Plaintiff's argument that it is *possible* for a claims administrator to be considered a *de facto* plan administrator if the facts show that the claims administrator was actually acting as a plan administrator" and concluding "that dismissal is not warranted if the complaint sufficiently alleges that Aetna was acting as a *de facto* plan administrator").

have rejected the *de facto* plan administrator doctrine." *Id.* *Oliver* provided a clear, cogent explanation for why the *de facto* plan administrator doctrine should properly apply to employers but not to third-party administrative services providers, to-wit: "Were we to find [the third-party service provider] a *de facto* plan administrator on these facts, we would undercut the ability of employers to contract out the administrative tasks associated with operating an ERISA plan …. Indeed, **it is hard to imagine how an administrative services provider could fulfill its functions without engaging in the types of activity that, in *Hamilton*, triggered the application of the *de facto* administrator doctrine**." *Id.* at 1195 (emphasis added). In accordance with this language from *Oliver*, courts in this Circuit have routinely determined that the *de facto* plan administrator doctrine has no valid application to third-party service providers (as opposed to employers).[6]

---

[6] *See, e.g., Smiley v. Hartford Life and Acc. Ins. Co.*, 610 Fed.Appx. 8, 8-9 (11th Cir. July 17, 2015) ("We have consistently rejected the use of the *de facto* plan administrator doctrine where a plaintiff has sought to hold a third-party administrative services provider liable, rather than the employer ….") (citation and internal quotation marks omitted); *Griffin v. Blue Cross and Blue Shield Healthcare Plan of Georgia, Inc.*, 157 F. Supp.3d 1255, 1259 (N.D. Ga. 2015) (relying on *Oliver* to reject plaintiff's contention that BCBS entities "can still be liable as *de facto* plan administrators"); *Till v. Lincoln Nat'l Life Ins. Co.*, 182 F. Supp.3d 1243, 1278 (M.D. Ala. 2016) (observing that "[t]he Eleventh Circuit recognizes the *de facto* plan administrator doctrine, but limits application of the doctrine to employers seeking to avoid liability as plan administrators," and concluding "the *de facto* plan administrator doctrine does not apply to third-party administrators"); *Poole v. Life Ins. Co. of North America*, 984 F. Supp.2d 1179, 1192 (M.D. Ala. 2013) (rejecting application of *de facto* plan administrator doctrine to third-party providers because "claims administrators are distinct from plan administrators, and only plan administrators are subject to the ERISA penalties set out in 29 U.S.C. § 1132(c)"); *Rohan v. UnitedHealthcare Ins. Co.*, 881 F. Supp.2d 1356, 1359 (N.D. Fla. 2012) (explaining that *de facto* administrator doctrine "has only been applied in circumstances in which an *employer* was sued for acting as a plan administrator with decision-making authority despite plan documents naming a different entity as the plan administrator," and observing that "[t]he Eleventh Circuit has expressly rejected attempts to impose *de facto* plan administrator status on a third-party administrative services provider"); *Atherley v. United Healthcare of Florida*, 2017 WL 5157843, *2 (M.D. Fla. Nov. 7, 2017) ("Where, however, a plaintiff has attempted to use the doctrine to shift responsibility under ERISA to a third-party service provider who was not specifically designated as the plan administrator, the Eleventh Circuit generally has rejected the argument."); *Gordon v. Federal Express Corp.*, 2014 WL 3611103, *11 (M.D. Fla. Apr. 28, 2014) (determining that *Oliver* forecloses plaintiff's argument "that Aetna is a *de facto* plan administrator due to its role in the LTD Plan's claims process"); *Fox v. Blue Cross and Blue Shield of Florida, Inc.*, 2012 WL 12892764, *2 (S.D. Fla. Mar. 22, 2012) (finding that "Blue Cross cannot be liable under 29 U.S.C. § 1132(c)(1) since the *de facto* administrator doctrine is
(Continued)

Given the centrality of the Eleventh Circuit's *Oliver v. Coca Cola* decision to CBA's Rule 12(b)(6) Motion, plaintiff must address it head-on and either distinguish it or explain why it does not really mean what defendant (and numerous courts applying it) says it means. Plaintiff's Response does neither, and in fact does not address *Oliver* at all. At most, plaintiff would generically distinguish the cases on which CBA relies as "deal[ing] with a *claim administrator acting as a claims administrator*. They do not address those instances *where a claims administrator acts as a plan administrator*." (Doc. 19, at 9-10.) This argument is not persuasive. After all, the *de facto* plan administrator doctrine is all about entities who are actually administering plans, regardless of how they are designated in plan documents. The *Oliver* line of cases stands for the proposition that third-party administrative service providers (such as CBA) are not eligible for application of the *de facto* plan administrator doctrine. These decisions do not state that third-party providers would be eligible if, in fact, they were performing plan administrator functions; indeed, if that were so, then there would be no exclusion at all because claims administrators (like employers or anyone else) would be covered by the doctrine so long as they were acting as a plan administrator. But that is not what the cases say. Again, the Eleventh Circuit has "consistently rejected the use of the *de facto* plan administrator doctrine where a plaintiff has sought to hold a third-party administrative services provider liable, rather than the employer." *Smiley v. Hartford Life and Acc. Ins. Co.*, 610 Fed.Appx. 8, 8-9 (11th Cir. July 17, 2015). That is what E.G. is attempting to do here; however, she cannot overcome this wall of adverse precedent.[7]

---

not applicable" to third-party administrative service providers); *Castro v. Hartford Life and Acc. Ins. Co.*, 2011 WL 4889174, *7-8 (M.D. Fla. Oct. 14, 2011) (relying on *Oliver* and concluding that "the plaintiff's argument that Hartford Life (who was not the plaintiff's employer) was the 'de facto plan administrator' is without merit"); *Kirkland v. Blue Cross and Blue Shield of Alabama*, 2009 WL 10703729, *6 (N.D. Ala. Nov. 20, 2009) ("where plaintiffs in this Circuit have sought to hold a third-party administrative services provider liable, rather than the employer, the Eleventh Circuit has flatly rejected the *de facto* plan administrator doctrine").

[7] Plaintiff leans heavily on a pair of unpublished district court cases, namely *House v. Aetna Life Ins. Co.*, 2015 WL 2250976 (M.D. Fla. May 13, 2015) and *Atherley v. United Healthcare of Florida*, 2017 WL 5157843 (M.D. Fla. Nov. 7, 2017). In deeming it "*possible* for a claims administrator to be considered a *de facto* plan administrator," *House* cited two unpublished district court opinions that predate *Oliver*, the *Till* case from the Middle District of Alabama (even though the *Till* court later issued an opinion that recognized and followed *Oliver*, (Continued)

**III. Conclusion.**

Because the *de facto* plan administrator doctrine does not apply to third-party administrative services providers in this Circuit, plaintiff's Amended Complaint does not state cognizable ERISA claims against CBA. For that reason, Defendant's Motion to Dismiss Amended Complaint (doc. 17) is **granted** pursuant to Rule 12(b)(6), Fed.R.Civ.P. This action is **dismissed without prejudice**.

DONE and ORDERED this 26th day of September, 2018.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

*see Till v. Lincoln Nat'l Life Ins. Co.*, 182 F. Supp.3d 1243, 1278 (M.D. Ala. 2016)), and only one other unpublished district court opinion. As for *Atherley*, the district court readily acknowledged in that opinion that "[w]here, however, a plaintiff has attempted to use the doctrine to shift responsibility under ERISA to a third-party service provider who was not specifically designated as the plan administrator, the Eleventh Circuit generally has rejected the argument." 2017 WL 5157843, at *2. These cases do not lend persuasive support to E.G.'s position.